**STATE of Missouri, Respondent,**

v.

**Cedric STROTHER, Appellant.**

**No. WD 42923.**

Missouri Court of Appeals,
Western District.

Jan. 8, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 5, 1991.

Bruce R. Anderson, Kansas City, for appellant.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

FENNER, Judge.

Cedric Strother appeals his convictions, following a jury trial, of second degree murder and armed criminal action for which he was sentenced as a prior offender to consecutive terms of thirty years and twenty years, respectively.

The facts adduced at trial revealed the following: Gary A. Cochran was stabbed to death on May 27, 1989, behind 910–912 Charlotte Street in Kansas City. Sometime shortly before midnight on May 26, 1989, Cedric Strother and Gary Cochran parked Cochran's car in the alley behind an apartment building at 910–912 Charlotte Street in Kansas City. The sound of a car driving into the alley attracted the attention of three witnesses, Jerry D. Price, Mary Deardorff and Donna Sue Jester. The three witnesses were together in Price and Deardorff's second floor apartment at Ninth and Charlotte streets, which overlooks the alley in the rear of the complex. Price and Deardorff had been entertaining Jester. The three had been smoking marijuana and listening to music. Another witness, Dwight Strother, Cedric Strother's brother, did not testify.

After the car drove up, Price looked out his apartment window and observed that the driver was wearing a yellow shirt. Price later recognized that person as Cedric Strother. Strother was known to Price and Deardorff through their acquaintance with Strother's brothers, Frank and Dwight. Later the witnesses in the apartment heard loud arguing. Price and Jester went to the window. Three men were observed in the alley at that time, Cochran, Strother and his brother, Dwight. Cedric Strother and Cochran were arguing loudly. Cochran was standing on the right side of the car. He climbed over the car towards Cedric Strother and yelled, "I'm tired of all this

fucking shit", following which the two then engaged in a pushing and shoving match, grabbing hold of each other. According to Price, Cedric Strother had one hand open and one hand closed. Strother pushed Cochran three times and each time he pushed, Cochran would stumble backward and forward. Price noticed a glitter, kind of like a metal color in Strother's closed hand at this time. Dwight Strother was observed trying to separate the two other men and attempting to hold his brother. Cedric Strother managed to pull away from his brother, went toward Cochran and grabbed him and the two again began to struggle. The struggle continued until Cochran fell to the ground. After Cochran fell, both Dwight and Cedric Strother were observed standing over the body in the alley. According to Mary Deardorff, when Cedric and Dwight were standing talking in the alley, she observed a knife in the hand of Cedric Strother which she subsequently saw him place in his pocket. Witness Price heard Cedric Strother exclaim, "What should I do?" Cedric Strother was then observed leaving the scene.

Examination of Cochran's body revealed a puncture wound on the left side of the chest, with a corresponding internal wound to the heart and minor abrasions and scrapes of the knee and shin, consistent with a fall. According to the medical examiner, Cochran's death was due to the heart wound. A blood test was also performed on Cochran, which determined his blood-alcohol level to be .24 percent.

Cedric Strother's wallet and fingerprints were found in Cochran's motor vehicle. Additionally, a knife sheath was found in the driver's side of the motor vehicle which Cochran's family did not recognize as his.

Strother presents three points on appeal, all relating in some fashion, to the issue of self-defense. In point one, he alleges that the trial court erred in failing to submit the issue of self-defense.

■ The trial court is obligated to submit a self-defense instruction if the issue is supported by the evidence, viewed in the light most favorable to the defendant. *State v. Chambers*, 671 S.W.2d 781, 783

(Mo. banc 1984). Failure to so instruct is reversible error. *Id.* at 784.

As the State correctly notes in its brief, the level of evidence necessary to support the self-defense issue has had various definitions such as:

'substantial evidence,' 'evidence putting it in issue,' 'any theory of innocence ... however improbable that theory may seem, so long as the most favorable construction of the evidence supports it,' 'supported by evidence,' 'any theory of the case which his evidence tended to establish,' 'established defense,' and 'evidence to support the theory.'

*State v. Fincher*, 655 S.W.2d 54, 58 (Mo. App.1983). (citations omitted).

■ "The right of self-defense is a person's privilege to defend himself against personal attack." *Chambers*, 671 S.W.2d at 783. A person may use deadly force in self-defense only when certain elements are present. Those elements, as set forth in *Chambers*, 671 S.W.2d at 783, are as follows:

(1) an absence of aggression or provocation on the part of the defender,

(2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death,

(3) a reasonable cause for the defender's belief in such necessity, and

(4) an attempt by the defender to do all within his power consistent with his personal safety to avoid danger and the need to take a life.

■ Herein, Strother was permitted to use deadly force only if the appearances, under the circumstances gave rise to a real or apparently real necessity to use such force and thus justified a fear of deadly attack upon himself. *See, State v. Neria*, 526 S.W.2d 396, 398 (Mo.App.1975). The absence of evidence of a threat by Cochran against Strother or of the display of some means of inflicting death or serious bodily injury to Strother negates the appearance here which would create the real or apparently real necessity for Strother to kill in order to save himself. *See, Id.* at 398, 399.

The facts, as adduced at trial through the testimony of eyewitnesses, indicated a simple assault situation, i.e., the two men pushing and shoving, grabbing hold of each other and struggling, not of the type which would justify deadly force.

■ Strother makes much of the size differential between himself and Cochran, noting that he is significantly smaller in stature than Cochran. However, something more than fear of size is required to justify the use of deadly force in self-defense. *Chambers*, 671 S.W.2d at 783. Some affirmative action, gesture or communication by the person feared indicating the immediacy of the danger, the ability to avoid it and the necessity of using deadly force must also be present. *Id.* Such was not the case here. The trial court was therefore, not required to instruct on self-defense. Point one is overruled.

■ In point two, Strother complains that the trial court erred in sustaining the prosecutor's objection to a portion of defense counsel's closing argument which attempted to argue the issue of self-defense. The merits of refusing the instruction on self-defense have been disposed of by point one. Clearly, the trial court did not err, therefore, in failing to permit defense counsel from arguing self-defense. The trial court properly restricted defense counsel's closing argument to the issues of law that were supported by the facts. Point two is denied.

In point three, Strother challenges the sufficiency of the evidence to support his conviction. He argues that his convictions were based upon circumstantial evidence and said evidence did not exclude every reasonable hypothesis of innocence.

■ Strother incorrectly characterizes the case as one based solely on circumstantial evidence. He cites the standard for reviewing circumstantial evidence, that being, in reviewing the sufficiency of circumstantial evidence to support a conviction the facts and circumstances must be consistent with each other and with the hypothesis of guilt and inconsistent with defendant's innocence and must exclude every reasonable hypothesis of innocence.

*State v. Biddle*, 599 S.W.2d 182, 192 (Mo. banc 1980). However, the circumstances need not be absolutely conclusive of guilt and they need not demonstrate impossibility of innocence. *Id.* Strother also attempts to reargue the self-defense issue claiming that the facts circumstantially suggest that he acted in self-defense.

■ As pointed out by the State, the case included both direct and circumstantial evidence. The direct evidence included, but was not limited to, the fact that Strother and Cochran were engaged in a struggle, that Dwight Strother attempted to and did intervene until Cedric Strother broke free from the restraint, the direct testimony of witness Deardorff that she saw Cedric Strother with a knife following the stabbing, the testimony of witness Price that she heard Cedric Strother exclaim, "What should I do?", and the fact that Cochran died of a single stab wound to the heart.

There is no need to once again reiterate the facts. Suffice it to say, that even if, as Strother argues, the evidence was purely circumstantial, it was sufficient to support his conviction. Point three is overruled.

The convictions are, in all respects, affirmed.

All concur.